FILED

2011 Jul-29  PM 06:33
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **RICARDO ANDRE DANIEL,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:10-cv-2051-AKK** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Ricardo Daniel ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  This Court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence, and, therefore, **AFFIRMS** the decision denying benefits.

## I. Procedural History

Plaintiff filed his application for a period of disability and disability insurance benefits on April 20, 2007, alleging a disability onset date of March 30,

2003, due to "scoliosis of the spine, [and a] learning disability."  (R. 78, 237, 252).

At the time of his alleged disability onset date, Plaintiff was 19 years old, entitling

him to child's disability benefits if he became disabled before turning 22 years old.

20 C.F.R. § 404.350(a)(5).  After denial of his application on June 15, 2007,

(R. 241), Plaintiff requested a hearing before the ALJ, which occurred on June 17,

2009.  (R. 251).  On April 8, 2010, the ALJ denied the claim, (R. 13-22), which

became the final decision of the Commissioner of the SSA when the Appeals

Council refused to grant review.  (R. 2-4).  Plaintiff then filed this action for

judicial review pursuant to section 1631 of the Social Security Act ("the Act"), 42

U.S.C. § 1383(c)(3).

Plaintiff, who was 26 years old at the time of the hearing, completed twelfth

grade but failed the exit exam and, as a result, does not have a high school

diploma.  (R. 255-56).  Plaintiff alleges that he has not engaged in substantial

gainful activity since the alleged onset date of disability.  (R. 257).  His past

relevant work included medium and unskilled work as a food preparer and car

detailer.  (R. 78, 101, 266).

## II.  Standard of Review

The only issues before this court are whether the record contains substantial

evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v.*

*Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence."  *See id*.  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that the review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

A claimant who is at least eighteen and who sustains a disability before reaching age twenty-two is considered a "child claimant" and is disabled under the Act if he has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which is expected to result in death, or which has lasted or is expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(C)(I); 20 C.F.R. § 404.350(a)(5).[1] The regulations define the statutory standard of "marked and severe functional limitations" in terms of "listing-level severity."  20 C.F.R. §§ 416.902, 416.906, 416.924(a), 416.926a(a); *see* 20 C.F.R. pt. 404, subpt. P, app. 1 (the listings).  The Commissioner has developed a specific sequential evaluation process for determining whether a child claimant is disabled. 20 C.F.R. § 416.924.  The three-step process requires the child claimant to show:  (1) that he is not working; (2) that he has a "severe" impairment or combination of impairments; and (3) that his impairment or combination of impairments is of listing-level severity, that is, the impairments meet, medically equal, or functionally equal the severity of an impairment in the listings.  20 C.F.R. §416.924.

---

[1] SSA's Regulations promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through March 12, 2010.

If a child claimant is not working and has a severe impairment, the ALJ must determine if the impairments meet or medically equal an impairment listed in the listings. 20 C.F.R. § 416.924(a)-(d).  If they do not, the ALJ must  then determine if the impairments are functionally equivalent in severity to a listed impairment, i.e. whether they must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R.§§ 416.926a(a) and 416.924(d).  To reach this assessment, the ALJ considers the child claimant's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for one's self; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).  If the impairments do not satisfy the duration requirements, or do not meet, medically equal, or functionally equal one of the listings in the Regulations, a finding of not disabled is reached and the  claim is denied.  *See* 20 C.F.R. § 416.924(d)(2).

## IV.  The ALJ's Decision

Under Step One of the three-part test, the ALJ found that Plaintiff had not engaged in any substantial gainful activity after the alleged onset date of disability on March 30, 2003.  (R. 15).  The ALJ then found that prior to attaining age 22, Plaintiff's severe impairments of scoliosis and borderline intellectual function

("BIF") met Step Two. *Id*. However, in Step Three, the ALJ determined that the "[Plaintiff] did not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id*. Specifically, the ALJ found that Plaintiff's BIF "evaluated under the requirements of Medical Listing 12.05C [metal retardation], resulted in moderate restriction in his ability to understand, remember, and carry out simple instructions." *Id*. In order to assess the degree of limitation found in the mental function analysis in Listing 12.05, the ALJ found also that Plaintiff has a residual functional capacity to perform light work with a sit or stand option. (R. 17). Based on these findings, the ALJ concluded that Plaintiff has "not been under a disability [ ] at any time prior to June 11, 2005, the date he attained age 22." (R. 21).

## V.  Analysis

*A.      The ALJ did not err by failing to develop a full and fair record.*

Plaintiff argues that the ALJ erred in failing to develop the record as to whether Plaintiff met or equaled Listing 12.05(c) Mental Retardation.  Doc. 11 at 8.  Specifically, Plaintiff asserts that the ALJ failed to order "a full consultative evaluation to properly resolve the question of mental retardation versus borderline intellectual functioning." *Id*. at 11.  This argument is unpersuasive.

Listing 12.05(c) requires a plaintiff to have (1) "deficits in adaptive functioning[2]" manifested before age 22, (2) "valid verbal, performance, or full scale IQ of 60 through 70," *and* (3) a physical [ ] impairment imposing an additional and significant work-related limitation of function."  20 C.F.R. pt. 404, subpt. P., app. 1, § 12.05.  Based on the record evidence, Plaintiff cannot meet at least two of these requirements.

First, the record does not support a finding that Plaintiff had deficits in adaptive functioning before turning 22 years old.[3]  In fact, the record states the opposite.  On May 16, 2000, one month before his seventeenth birthday, the Jefferson County School System completed a McAdory High School Eligibility Decision Regarding Special Education Services record on Plaintiff and noted his strength in oral expression, and that when observed in science class he "asked questions concerning graphs, talks to neighbor, appears interested yet distractable."  (R. 138).  Significantly, the evaluation ruled out mental retardation and emotional disturbance and left the adaptive behavior assessment section blank.

---

[2] The Social Security guidelines state that adaptive behavior/functioning include a full range of self-care activities and social functioning that can be observed at school and home.  *See* www.ssa.gov/disability/professionals/bluebook/112.00-mentaldisorders-childhood.htm#top.

[3] The court notes that there is limited evidence indicative of Plaintiff's adaptive behavior through age 22 years, which is the period of disability for which he applied.  In light of this deficiency, the court considered also evidence gathered after Plaintiff reached age 22 years.

(R. 140).  The record stated further that Plaintiff was eligible for special education

services because he had a "specific learning disability."  *Id.*

The school evaluated Plaintiff again on May 6, 2002, when Plaintiff was

eighteen.  A counselor completed a consent for special education and noted that

(1) he was still eligible for services due to his specific learning disability, (R. 158),

(2) his strengths were oral expression and reading comprehension, and (3) his

goals were to pass twelfth grade English and the high school exit exam, and to

transition to competitive employment and independent living without support, (R.

161-62).  The counselor noted also that Plaintiff did not need transition services in

instruction or community experiences, but did need them in development of

employment and post-school living objectives.  (R. 161).

The court notes that the school administrator's assessment that Plaintiff was

not mentally retarded carries considerable weight in light of the fact that they were

in the best position to evaluate him through testing and observation.  The court

notes also that the two evaluations mirror each other even though they were two

years apart.  In fact, the last one adds Plaintiff's strengths in reading

comprehension– all of which support the ALJ's findings.

The only support of mental retardation in the record came from Plaintiff's

mother, who on May 7, 2007, when Plaintiff was 23, completed a Daily Activities

Questionnaire form.  She commented that Plaintiff (1) needs his brothers and friends help bath and dress him, (2) does not shop, do chores around the house, or cook, but can make a sandwich, (3) does not like to be around people, and (4) goes outside the home about three times per week.  (R. 118-19).  However, one month later, on June 2, 2007, Plaintiff presented *alone* to Dr. Charles Carnel, who noted:

> The claimant states that his is independent with all activities of daily living, ambulation and transfers, and requires no assistance in bathing, dressing, putting on socks, shoes, pants, shirt and getting in and out of bed, chairs, cars and couch or up and down stairs.  He states that occasionally he has a flare up of his low back pain and has to have help getting out of bed and up from deep chairs.
>
> * * * *
>
> He denies doing any of the cleaning, cooking, dishes, or laundry or any of the yard work.
>
> * * * *
>
> The claimant is able to take both of his shoes off, which are laced up tennis shoes and athletic socks by slipping off both shoes by using both of his hands while bending directly at the waist so that his chest is almost touching his thighs while seated in the chair next to the examination table.

(R. 174-75).  The inconsistency in the mother's and Dr. Carnel's accounts of Plaintiff's daily self-care and sociability is not easily resolved because the record generally lacks substantive medical evidence.  At the hearing, Plaintiff testified that (1) a female friend drives him places, (R. 261), (2) he can perform repetitive tasks like putting a nut and bolt together if shown how to do it, (R. 262), and (3) he can change a diaper, (R. 263).  Plaintiff denied doing chores or cooking, (R.

261), but stated that he drives infrequently, *id*., and can set and clear table, (R. 264).

Turning now to the relevant standard for Listing 12.05(c), this record fails to show that Plaintiff has deficits in adaptive functioning, i.e., the first requirement.  First, Plaintiff's special education records during high school do not reveal that Plaintiff had problems with daily living or communication, and in fact, rule out mental retardation and list oral communication and reading comprehension as strengths.  As stated earlier, these records are the most persuasive and reliable of Plaintiff's adaptive functioning through age 19. Second, Plaintiff's own testimony to the ALJ and statements to Dr. Carnel do not suggest adaptive functioning deficits.  Because Plaintiff does not have "deficits in adaptive functioning," he cannot meet the listing for mental retardation. Therefore, the ALJ's finding is supported by substantial evidence.

Alternatively, even if Plaintiff satisfies the adaptive functioning deficit requirement, he is still not disabled because he does not meet the final requirement, i.e., he does not have a "physical [ ] impairment imposing additional and significant work-related limitation of function."  20 C.F.R. pt. 404, subpt. P., app. 1, § 12.05.  Although Plaintiff has a scoliosis diagnosis, (R. 155), and complained at the hearing that his pain rated a seven at its worse, (R. 260),

Plaintiff failed to provide evidence of severe limitations from his scoliosis.  In fact, just a few days after his 22nd birthday, on June 13, 2005, chiropractor Gerald Collins ("Dr. Collins") opined that after treating Plaintiff for the preceding two months for headache, neck pain, and mid and lower back pain sustained as a result of a motor vehicle accident, "[h]e progressed and was asymptomatic on his last visit but states that he still does have some occasional pain."  (R. 144).  Moreover, at the hearing, when asked what type of objects around the house are too heavy for him to lift, Plaintiff responded a couch or television.  (R. 260).  In other words, Plaintiff can do light and medium lifting.  The court notes also that it does not appear that any physicians prescribed medications to treat Plaintiff for severe pain, except for acute pain associated with the motor vehicle accident.  In fact, both Drs. Collins' and Carnel's treatment notes on April 6, 2005, and June 2, 2007, respectively, indicate that Plaintiff was not taking any medication.  (R. 174). Therefore, Plaintiff also does not meet the requirement that he has a "physical [ ] impairment imposing additional and significant work-related limitation of function."  In other words, the ALJ's decision that Plaintiff does not meet or equal Listing 12.05 was supported by substantial evidence.

B.      *There is no evidence that the Appeals Council did not properly consider Plaintiff's additional medical evidence.*

Plaintiff argues that the Appeals Council failed to consider the additional evidence he submitted with his brief because the brief and the evidence occur in separate places in the record.  Doc. 22 at 13.  This argument is unpersuasive.  The Appeals Council noted that it "considered the reasons you disagree with the decision in the material listed on the enclosed Order of Appeals Council."  (R. 2).  The Appeals Council's May 27, 2010, order noted that it "received additional evidence [Plaintiff's October 26, 2009 brief] which it is making part of the record," and marked it Exhibit AC-1 (R. 5).  Indeed, Plaintiff's brief is Exhibit AC-1 of the record. (R. 246).  As Plaintiff correctly states, the medical evidence he attached to the brief occurs separately in the record.  (R. 23-34).  However, the court cannot conclude solely on this basis that the Appeals Council failed to consider this medical evidence.  The court declines to speculate on why or how the separation occurred, or to find that the Appeals Council failed to consider this evidence based on Plaintiff's speculation because speculation and conjecture are not proper evidence and are insufficient for a party to carry his burden.  Significantly, that the additional medical evidence is a part of the record militates against Plaintiff's contention.  Therefore, remand is not warranted.

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination.  The Commissioner's final decision is, therefore, **AFFIRMED**.  A separate order in accordance with this memorandum of decision will be entered.

Done the 29th day of July, 2011.


**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE